## PATTERSON v. THE STATE.

The evidence, though conflicting, is sufficient to authorize a convic-
tion of murder, the jury believing the witnesses for the State, and
the trial judge being satisfied.

June 2, 1890.

Murder.    Criminal law.    Verdict.    Before Judge
HANSELL.    Brooks superior court.    November term,
1889.

Indictment against Patterson for the murder of
Lucius Williams.    The principal witness for the State
was John C. Williams, and he testified in substance as
follows :    On the night of the 4th of February, witness
was going to a school-house.    On his way he saw four
boys, defendant, McAfee, Sharpe and Johnson.    De-
fendant and Johnson stopped at a bridge, and the others
went on.    As witness crossed the bridge he said, "Good
evening."    Johnson said, " Good evening."    Defend-
ant said, " Nigger is you coming at me ?"    Witness
walked on, not knowing defendant was talking to him.
As witness got against the other boys, Johnson said,
" Andrew Patterson, let's go away from here ; you have
been picking at and meddling everybody that comes
by ; somebody is going to hurt you."    Witness knew
then he was talking about him, and stopped to wait
until he came up, to see what he wanted.    Defendant
got within about twelve steps of him ; and deceased
came meeting them, passed witness and met them.    De-
fendant said to deceased, " Nigger is you coming at me;
nigger is you coming after me ?"    Deceased said, "What
do I want to come after you for ?"    Defendant said,
" Damn you, nigger; is you coming at me ?"    Deceased
went up to him and said, "If you curse me again, I will
slap you down."    Defendant said, with an oath, "Nigger
is you coming at me ?"    Deceased slapped him ; they
both made licks together.    Deceased jumped back

v 85-39

about four or five feet and said, "You cut me on the leg; I was not bothering you." Defendant arose, made for the deceased and said, "I will cut your damn heart out and put a hole in it." Witness thought they were going to shoot, heard no more and went on. Just before defendant and deceased hit, McAfee and Sharpe ran. Deceased hit defendant with his open hand; ran twenty-five or thirty yards before he fell, defendant following him; he was wounded near the hip, and was dead the next day. Witness was not related to deceased. On cross-examination, witness related what occurred between defendant and deceased substantially as he had delivered it on his examination in chief, except that he stated that deceased hit defendant with the palm of his hand, knocking him down; that deceased was larger than defendant; that as soon as he heard deceased say, "If you curse me again I will slap you down," he heard the lick; that deceased did not straddle defendant and stamp him; that it was all done in a minute; that witness did not see defendant cut deceased, and does not know whether deceased had a knife open or not; they both made licks together. It appeared from other testimony for the State, that deceased was cut on the thigh and an artery was severed, causing him to die from the loss of blood; that the knife went in obliquely; that defendant was arrested that night, and there was a knife in his pants pocket, on which witnesses did not see any blood, and no blood was seen on his clothes. A witness testified that after the cutting, on the same night, she saw defendant at a candy-pulling; that there was a fire up about town, and some of the boys present asked what was the fire doing; that defendant was sitting there with a knife in his hand and looked like he was cleaning cold blood out of the rivet and said, "A fellow got cut." They asked who it was, and he said, "Lucius Williams," They asked who cut him, and he

said, "This knife cut him." This witness saw no blood on defendant.

For the defendant, Johnson testified in substance as follows: Defendant asked deceased, "Is you coming after me?" and deceased said, "No." Defendant said, with an oath, "You better not." Deceased put his hand in his pocket, walked up to defendant, cursed him, knocked him down and stamped him. Deceased ran off; defendant stayed there a little while, and after awhile came to where deceased was lying and said his side hurt him where deceased had stamped him. John Williams was some little distance away, going towards the church, when the fight took place, and Sharpe and McAfee were between him and witness. Defendant and witness had taken a drink each, and witness did say to defendant, "Stop picking at people on the streets," but did not tell him to go away. Thinks McAfee ran when they commenced to fuss, but did not see Sharpe run. Never saw defendant pull out his knife at all, and he did not have his knife out some three hundred yards back. Does not know whether deceased stamped defendant good or not. Sharpe testified, among other things, that defendant said, "Is you coming after me?" Deceased said, "No, what do I want with you?" Defendant said, "Is you coming after me?" and some. thing else which witness did not hear. Deceased cursed him, and defendant replied in the same way, and deceased knocked defendant down with his fist and stamped him about four times. Deceased jumped off and looked down at his leg, and then ran and said, "Andrew, you cut me." When he fell, one Burke tried to get him up, but he said he could not walk. When defendant and deceased met, deceased walked up to defendant, and defendant turned his shoulder and his shoulder sort of shoved him. Defendant fell with his feet in the ditch and his head about midway of the

sidewalk. The sidewalk and ditch were sandy and the dirt was wet, and defendant squirmed and twisted when he was down. Witness did not see the knife during the trouble, and did not see defendant's pistol or knife that night. Defendant can use both of his hands in writing or anything like that. Defendant complained of being hurt just a little while before Steve Hall came up, and witness supposes he heard it. Steve Hall testified, among other things, that the difficulty occurred about thirty yards from his house, and he was standing in the back of his garden and heard it; that defendant said to deceased, "Where are you going, you old nigger?" Deceased replied, "Is that anything to you?" Defendant said, "If you are after me I am ready for you"; and deceased replied, "I have not got anything to do with you; and don't be bothering me." Defendant cursed deceased, and deceased told him not to do it any more. Defendant said, with an oath, "If you want anything, go into it." It was dark, and witness could not see them but heard them. The fuss did not continue long, and witness does not think either one was on the ground. It seemed like they were knocking. After the knocking stopped, deceased said, "Andrew, you cut me for nothing"; and defendant said, "I will cut your damn heart out"; and witness then heard running. When the scuffle took place Sharpe and McAfee ran off, and defendant could not have said anything to Sharpe or to the others without witness hearing it at that time. He does not know where John Williams was standing when the difficulty occurred. The blood gushed from the wound; and witness thinks if deceased was standing over defendant when the blood gushed, he would have got bloody. After deceased was cut, he was on the ground bleeding and unconscious, and witness found an open knife by his side. Does not know which one of the boys put the knife there. Johnson

came up after witness and defendant were there. Did not hear defendant say anything when he walked up to where deceased was, and did not see anything in his hands. Met defendant and asked what was the matter, and he said he had cut deceased, that he was sorry he did it and that he had to do it. Witness ran to where deceased was and turned him over; and defendant could not have said anything to Sharpe before witness got there, without witness hearing it; there was nobody there but defendant. Witness took some matches that night and went along and examined the ground, and could see no signs of a scuffle; examined it again the next morning a little after light; does not think it rained that night or morning until after the examination. Defendant's father testified that when his son came home that night, the case of a harmonica, which he carried in his breast pocket mostly, was mashed together. After verdict of guilty with recommendation of imprisonment for life, the defendant moved for a new trial, on the grounds that the verdict is contrary to law, evidence and the charge of the court. The motion was overruled, and defendant excepted.

W. S. HUMPHREYS, by brief, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, and D. W. ROUNTREE, solicitor-general, for the State.

SIMMONS, Justice.

The evidence was somewhat conflicting in this case. The jury believed the witnesses for the State. If their testimony is true, it is sufficient to authorize the finding of the jury; and the trial judge being satisfied with that finding, we cannot say that he committed error in overruling the motion for a new trial upon the ground that the verdict was contrary to the evidence, which was the only ground argued before us for a reversal of his judgment.          *Judgment affirmed.*